### 69698. HAMBRICK v. THE STATE.
(330 SE2d 383)

BEASLEY, Judge.

In this appeal from conviction and sentence for robbery, aggravated assault, and burglary, there was evidence as follows: appellant Hambrick went to the residence of his wife's elderly stepgrandfather, John Arrington, and identified himself to the nearly blind Arrington as another of Arrington's grandsons. Arrington knew the sound of Hambrick's voice, was not deceived, and knew all along that the visitor was Hambrick. Arrington permitted Hambrick to come and remain to chat with him.

Shortly before, Hambrick had come to the house and induced Arrington's wife to leave so that the old man would be alone. When Hambrick saw her leave, he returned.

Arrington customarily kept his money in snuff cans tied around his neck with stockings. Hambrick tried to pull the snuff cans off but

was unsuccessful so he took the pocketknife already in his hand and cut them loose. When Arrington put his hand up to his neck to try to stop Hambrick, the victim's finger was cut. *Held*:

1. Hambrick asserts that the evidence was insufficient for any rational trier of fact to find the essential elements of the offenses charged beyond a reasonable doubt, and that the trial court erred in failing to direct a verdict of acquittal. He specifically enumerates as error the court's refusal to direct a verdict of acquittal on the charge of armed robbery, for which he was indicted but not convicted.

Even if the refusal was error, it was harmless inasmuch as the grant of a directed verdict as to armed robbery would still have permitted appellant's prosecution for robbery, a lesser included offense of which he was ultimately convicted. See *Dickerson v. State*, 151 Ga. App. 429 (2) (260 SE2d 535) (1979). We find, however, that the trial court committed no error in refusing to direct a verdict on the original charge.

"A person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41.

Appellant challenges the nature and role of the pocketknife as an offensive weapon. The term "offensive weapon" includes not only weapons which are offensive per se, such as firearms loaded with live ammunition. It also embraces other instrumentalities not normally considered to be offensive weapons in and of themselves but which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use. *Meminger v. State*, 160 Ga. App. 509 (287 SE2d 296) (1981), rev'd on other grounds, 249 Ga. 561 (292 SE2d 681) (1982), vacated, 163 Ga. App. 338 (295 SE2d 235) (1982).

The knife in this case, though rather small and of a type suitable for carrying in the pocket, was arguably capable of inflicting the types of injuries which generally can be produced by knives, including death or great bodily injury. Whether or not the pocketknife in question constituted a deadly (or offensive) weapon was properly for the jury's determination. See *Quarles v. State*, 130 Ga. App. 756 (2), 757 (204 SE2d 467) (1974); *Banks v. State*, 169 Ga. App. 571, 572 (314 SE2d 235) (1984).

From the evidence, the jury could have found that the knife was used against the elderly victim in a manner likely to produce death or great bodily injury. Furthermore, there was evidence that Hambrick did use the knife directly, to take the money from the victim's person.

Appellant further contends that there was insufficient evidence of any intent to rob Arrington, and in support of this cites a statement

by the trial judge that Hambrick "did not intend, he did not intend to rob the man by force." This statement was made merely in colloquy among the court and counsel, and the judge went on to say, "He intended to take it away from him as a robbery by sudden snatching, it seems to me, or by cutting it away from his person." Snatching property while using an offensive weapon can constitute armed robbery rather than robbery by sudden snatching. See *Geter v. State,* 226 Ga. 236 (173 SE2d 680) (1970).

" '[I]t is not necessary for the state to show that appellant expressed an intent to rob in so many words, or declared a purpose to carry the intent into effect, for the jury to arrive at the conclusion he so intended. The intention may be gathered from the circumstances of the case as proved. In seeking the motives of human conduct, inferences and deductions may properly be considered where they flow naturally from the facts proved. [Cit.]' *Fears v. State,* 152 Ga. App. 817 (2) (264 SE2d 284)." *Chitwood v. State,* 170 Ga. App. 599, 600 (317 SE2d 589) (1984). The evidence was sufficient to withstand a motion for a directed verdict of acquittal regarding armed robbery.

After having reviewed the evidence in the light most favorable to the prosecution as to Hambrick's conviction for robbery, we conclude that any rational trier of fact could have found the essential elements of robbery beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Boyd v. State,* 244 Ga. 130 (259 SE2d 71) (1979).

We next consider Hambrick's conviction for aggravated assault. A person commits such offense when he assaults with intent to rob or with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. OCGA § 16-5-21. A person assaults when he either attempts to commit a violent injury to the person of another or commits an act which places another in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20. The court so charged.

Here again, appellant argues a lack of intent and the innocuous nature of the knife in question. For the reasons given above, we find this to be without merit. A directed verdict was not demanded, and an application of the test recited above, as set by *Jackson* and *Boyd,* affirm the verdict as legally authorized.

With regard to burglary, Hambrick argues that the evidence is undisputed that he had authority to enter. While that is true, it does not end the matter. The statute provides that "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another . . . or any room or any part thereof."

OCGA § 16-7-1. (Emphasis supplied.)[1] "Without authority" means without legal right or privilege or without permission of a person legally entitled to withhold the right. OCGA § 16-1-3; *Brown v. State*, 143 Ga. App. 256 (238 SE2d 258) (1977). Although the disguised caller initially had Arrington's authority to enter and remain for a friendly visit, there was sufficient evidence, including testimony of the victim's struggle with Hambrick, to create a jury question regarding whether the authority to remain ceased at the time the offensive, aggressive behavior began. When Hambrick's ulterior purpose beyond the bounds of a friendly visit became known to Arrington, who was the source of the authority, and he reacted against it, a reasonable inference could be drawn that the authority to remain ended. Arrington did not have to shout "Get out!" for this to be so. Yet Hambrick remained until he got possession of the money, far beyond the time at which the scope of the permission ended.

There is also sufficient evidence that appellant had the requisite intent both when he entered the victim's home and when he remained there. In any event, whether a defendant entertained an intent to commit a felony is a matter for the jury to say, under the facts and circumstances proved. *Kinney v. State*, 155 Ga. App. 95 (270 SE2d 209) (1980).

A review of the evidence adduced at trial reveals there was ample evidence sufficient to enable any rational trier of facts to find the existence of the offense of burglary beyond a reasonable doubt. *Jackson v. Virginia*, supra; *Maddox v. State*, 170 Ga. App. 498 (317 SE2d 617) (1984).

2. Appellant also contends that the court erred in failing to charge the jury as requested, that theft by taking is a lesser included offense of armed robbery and burglary.

It is true that theft by taking (OCGA § 16-8-2) has been held to be a lesser included offense of armed robbery, *Shepherd v. State*, 234 Ga. 75, 78 (214 SE2d 535) (1975), and also may be a lesser included offense to burglary. *Lockett v. State*, 153 Ga. App. 569 (266 SE2d 236) (1980). However, where the evidence shows completion of the greater offenses, as here, it is not necessary for the court to charge on a lesser included offense. See *Smith v. State*, 228 Ga. 293, 294 (185 SE2d 381) (1971); *Craighead v. State*, 126 Ga. App. 300, 302 (190 SE2d 606) (1972); *Jordan v. State*, 239 Ga. 526 (238 SE2d 69) (1977); *Mallory v. State*, 166 Ga. App. 812, 814 (305 SE2d 656) (1983).

The evidence clearly warranted, as to these offenses, the given charges on armed robbery and burglary, as well as the charge on rob-

---

[1] The Georgia statute on burglary departs significantly from the common law crime of breaking and entering. See 12A CJS, Burglary, § 2.

bery, that is, by the use of force, intimidation or sudden snatching (OCGA § 16-8-40). The trial court was required to go no further. This enumeration is without merit.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED APRIL 2, 1985.

*C. Michael Bozeman, A. J. Whitehurst*, for appellant.

*H. Lamar Cole, District Attorney, James E. Hardy, Assistant District Attorney*, for appellee.